**UNITED STATES, Appellee,**

v.

**Specialist Rosendo P. RIOS, Jr., United States Army, Appellant.**

**ARMY 20020231.**

U.S. Army Court of Criminal Appeals.

18 Jan. 2007.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Charles A. Kuhfahl, Jr., JA; Captain Lonnie J. McAllister II, JA (on brief); Lieutenant Colonel Steven C. Henricks, JA; Major Fansu Ku, JA; Captain Edward Bahdi, JA (on specified issue brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major William J. Nelson, JA (on brief); Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Captain Magdalena A. Acevedo, JA; Captain Jaired D. Stallard, JA (on specified issue brief).

Before OLMSCHEID, Senior Judge, GALLUP, and KIRBY, Appellate Military Judges.

## OPINION OF THE COURT

OLMSCHEID, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ]. Contrary to his pleas, a general court-martial composed of a panel of officer and enlisted members convicted appellant of rape of a person under the age of sixteen, in violation of Article 120, UCMJ, 10 U.S.C.

§ 920.[1] The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of Private E1. Appellant was credited with one day of confinement against his sentence to confinement.

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant's assignments of error, the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's reply thereto. We find the errors asserted by appellant to be without merit. On 21 September 2006, however, we specified the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN DENYING THE COURT–MARTIAL PANEL'S REQUEST TO REVIEW THE TESTIMONY OF MS. H, THE ALLEGED VICTIM, AND DR. G, THE GOVERNMENT'S MEDICAL EXPERT WHO CONDUCTED THE SEXUAL ASSAULT EXAMINATION OF THE ALLEGED VICTIM.

Although we find that the military judge abused his discretion in denying the panel's request to review the testimony, we determine the error did not prejudice appellant's substantial rights.

## FACTS

Appellant contested the charges of raping and forcibly sodomizing Ms. H, a fifteen year-old girl. Ms. H, the government's first witness, testified that appellant was staying at her aunt's residence. One evening, while visiting her aunt, Ms. H cooked dinner for her aunt and appellant. Appellant provided alcoholic beverages for the meal and later several neighbors came over for a party. When the party ended at approximately 0100 hours, Ms. H was intoxicated and ill. Anticipating that she was going to become sick, Ms. H tried to get to the bathroom before vomiting. She was unsuccessful, however, and vomited on her shirt and feet. Her aunt removed Ms. H's shirt to wash it and asked appellant, the only other person in the house, to help get Ms. H from the bathroom to a makeshift bed on the floor in a guestroom. Ms. H wore a bra, underwear, and flannel pajama pants. Before her aunt returned with a wet washcloth, Ms. H slapped appellant because he touched her inappropriately between her legs and kissed her on the lips. Ms. H vomited at least eight times that night.

Ms. H testified that later in the morning she awoke naked, with appellant licking her between her legs. Ms. H pushed appellant's head away and tried to keep him from inserting his penis into her vagina by squeezing her legs together. Appellant attempted to pull them apart. Weak, Ms. H rolled over. Appellant rolled her back over and penetrated her vagina with his penis. He did not ejaculate. Ms. H told appellant to leave her alone and he left a couple of minutes later. After Ms. H heard the front door to the house shut, she went to the bathroom and saw that she "was bleeding everywhere." Frightened and upset, she decided to wake up her aunt, who told Ms. H not to bathe and took her to the hospital.

On cross-examination, Ms. H admitted that although she told the first investigating officer who interviewed her that she awoke to appellant's head between her legs, she later told a physician, as well as another investigating officer, that she awoke to appellant trying to insert his penis inside of her. On redirect, Ms. H testified that she was 100 percent sure that appellant, without her consent, penetrated her vagina with both his penis and his tongue.

The government's final witness was Dr. G, the doctor who performed the sexual assault examination of Ms. H. Doctor G's examination noted a tear of Ms. H's hymen at the six o'clock position, accompanied by swelling, bleeding, and bruising of the vaginal area. Doctor G explained that, due to its location, injury to the hymen requires penetration. The injuries were consistent with blunt force penetrating trauma. Doctor G also deter-

---

1. The panel found appellant not guilty, in accordance with his pleas, of forcible sodomy of a person under the age of sixteen, a violation of Article 125, UCMJ, 10 U.S.C. § 925.

mined that the injuries occurred within twelve to twenty-four hours of the examination. No semen was present. The examination could not establish what had penetrated Ms. H's vagina or whether the penetration had been consensual. Ms. H told Dr. G that she awoke to appellant trying to insert his penis into her vagina, that he then began licking her breasts and external genitalia, and that he finally inserted his penis into her vagina. Doctor G's physical examination was consistent with Ms. H's recitation of events.

The defense case relied on the testimony of one witness, Dr. (Major) Tucher, the assistant chief of the Obstetrics and Gynecology Department at Darnall Army Community Hospital. Doctor Tucher reviewed Ms. H's medical records prior to trial. He testified that compared to the vaginal trauma in vaginal child births, Ms. H's vaginal trauma was relatively minor. He could not tell from the medical records whether Ms. H's vaginal trauma was caused by consensual or nonconsensual acts. Appellant did not testify.

During the panel's deliberation on the findings, the president of the panel sent the following written question to the military judge, via the bailiff: "The panel would like to review the testimony of [Ms. H] and Dr. [G]. Is this possible?" The military judge then held a session, pursuant to Article 39a, UCMJ, in which he explained:

> The president of the panel handed the bailiff a question earlier . . . and I just said no.[2] It's not—we're not going to type up a transcript tonight and we're not going to sit here while they listen—you know we go through the tapes to determine what testimony and so on and so forth. I've never heard of a court doing it in my entire career and I don't know of any basis for going over it so, that was my answer.

**2.** The manner in which the military judge responded to the panel's question is unclear from the record as he did not do so in open court and on the record. "The military judge of a court-martial may not consult with the members of the court except in the presence of the accused, trial counsel, and the defense counsel . . . ." UCMJ art. 26(e), 10 U.S.C. § 826(e). Furthermore,

> [w]hen members of a court-martial deliberate or vote, only the members may be present. All

When the military judge asked if counsel had any comments concerning this, civilian defense counsel responded, "[n]one, Your Honor."

## DISCUSSION

■ "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." *United States v. Martinsmith*, 41 M.J. 343, 347 (C.A.A.F.1995) (quoting UCMJ art. 46, 10 U.S.C. § 846). Moreover, Rule for Courts–Martial [hereinafter R.C.M.] 921(b) provides that "[m]embers may request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced. The military judge may, in the exercise of discretion, grant such request." We review a military judge's denial of such a request for an abuse of discretion. *United States v. Carter*, 40 M.J. 102, 104 (C.M.A. 1994).

■ In a case factually similar to the present case, our superior court held that "court members [are] at liberty to request that witnesses be called or recalled or to have the testimony reread by the court reporter even though they [have] commenced their deliberations. Hence, to the extent that the military judge indicated to the contrary, he was wrong." *United States v. Lampani*, 14 M.J. 22, 26 (C.M.A.1982). The *Lampani* Court, while recognizing that a judge could properly deny a request for additional evidence, clearly set forth a nonexclusive list of factors that a military judge must consider before doing so.

> Difficulty in obtaining witnesses and concomitant delay; the materiality of the testimony that a witness could produce; the likelihood that the testimony sought might be subject to a claim of privilege; and the

> other proceedings, including any other consultation of the members of the court with counsel, or the military judge, shall be made part of the record and shall be in the presence of the accused, the defense counsel, the trial counsel, and in cases in which a military judge has been detailed to the court, the military judge. UCMJ art. 39(b).

objection of the parties to reopening the evidence are among the factors the trial judge must consider.

*Id.* at 26.

Here the military judge failed to analyze the panel's request using the above stated factors. The government, therefore, properly concedes that the military judge erred in summarily denying the panel's request to rehear the testimony of Ms. H and Dr. G because he had "never heard of a court doing it in [his] entire career and [he did not] know of any basis for going over it . . . ." A plain reading of R.C.M. 921(b), Article 46, UCMJ, and the case law reveals the military judge clearly abused his discretion.

This does not end our analysis, however. Under Article 59a, UCMJ, 10 U.S.C. § 859a, to grant relief, we must also find that the military judge's error materially prejudiced the substantial rights of appellant. Although circumstances may exist in which a military judge's erroneous denial of a panel's request for evidence could rise to the level of a denial of a defendant's rights to due process or confrontation under the Fifth or Sixth Amendments to the United States Constitution, we do not find such a denial here. The panel did not ask for any new evidence, but only to rehear evidence already presented. Appellant does not allege, nor do we find, that he was hindered in his cross-examination of the government's witnesses or in his presentation of his case. When an error is nonconstitutional in nature, "the [g]overnment has the burden of demonstrating that 'the error did not have a substantial influence on the findings.'" *United States v. Berry,* 61 M.J. 91, 97 (C.A.A.F.2005) (quoting *United States v. McCollum,* 58 M.J. 323, 342 (C.A.A.F.2003)); *United States v. Adams,* 63 M.J. 691, 699 (Army Ct.Crim.App.2006). Under this analysis we conclude that appellant's substantial rights were not materially prejudiced by the military judge's error, and that error had no substantial influence on the findings.

As did our superior court in *Lampani,* we determine that the absence of a defense objection to the military judge's actions does not equate to waiver. *Lampani,* 14 M.J. at 27. It is, however, consistent with a trial strategy that relied on perceived weaknesses in the government's evidence. *Id.* "Whether defense counsel realized that the judge had erred in his advice about [rehearing witness testimony], he obviously perceived that this advice had not prejudiced his client." *Id.*

Moreover, the record amply supports the defense strategy in not objecting to the military judge's denial of a rehearing of these witnesses. We find the government evidence in this case overwhelming. Ms. H and Dr. G were the government's two strongest witnesses. Doctor G's testimony provided little doubt that Ms. H had sexual intercourse on the night in question. Ms. H's testimony, coupled with her level of intoxication and resulting illness, also left little doubt that she did not voluntarily engage in this sexual activity. Appellant, the only male at the scene, knew of Ms. H's condition, as he had not only supplied the alcohol, but had to carry Ms. H from the bathroom to the bedroom. Had the military judge granted the request to rehear this testimony, we are confident the panel would still have convicted appellant of raping Ms. H.

Rather than prejudicing appellant, we find the military judge's refusal to grant the panel's request may have actually benefited appellant. It may not have been clear to the panel at the close of the evidence whether appellant had penetrated Ms. H's vagina with his tongue. At the beginning of the government's case, Ms. H was "100% sure" that appellant penetrated her vagina with his tongue. At the close of the government's case the following day, Dr. G, however, testified that Ms. H told her that appellant had only licked her external genitalia. It is this point, regarding the forcible sodomy charge, which we believe prompted the panel's request to rehear Ms. H and Dr. G's testimony. The panel found appellant not guilty of forcible sodomy or any lesser included offense. Had the panel reheard Ms. H's testimony, the panel may well have found appellant guilty of both raping *and* forcibly sodomizing Ms. H.

## CONCLUSION

Although, we find that the military judge abused his discretion in denying the panel's request to review the testimony, we determine under the facts of this case that the error did not prejudice appellant's substantial rights. The findings of guilty and the sentence are affirmed.

Judge GALLUP and Judge KIRBY concur.