# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CHIAFULLO, BURTON, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain KEVIN W. BEER**
**United States Army, Appellant**

ARMY 20160659

Headquarters, U.S. Army Aviation Center of Excellence
Richard J. Henry, Military Judge
Lieutenant Colonel Susan A. Castorina, Staff Judge Advocate

For Appellant: Captain Oluwaseye Awoniyi, JA (argued); Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Julie L. Borchers, JA; Captain Heather Martin, JA; Captain Oluwaseye Awoniyi, JA (on reply and supplemental briefs); Lieutenant Colonel Christopher D. Carrier, JA; Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on supplemental reply brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on motion for reconsideration); Samuel S. Frey, Extern.

For Appellee: Captain Joshua Banister, JA (argued); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Marc B. Sawyer, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Marc B. Sawyer, JA (on supplemental brief).

7 January 2019

-------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
-------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CHIAFULLO, Chief Judge:

Appellant raises two assignments of error to this court: (1) whether the military judge abused his discretion by summarily denying the panel's request for additional evidence, and (2) whether appellant received ineffective assistance of counsel. The government concedes the first error, disputes the second, and argues that neither assigned error resulted in material prejudice.

However, prior to addressing the assigned errors, we must first analyze the additional and statutorily mandated issue of whether the evidence is factually sufficient. Pursuant to our review, we find two specifications are factually insufficient and grant appropriate relief. We affirm the remaining specifications as we find the assigned errors do not warrant additional relief.

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of signing a false official statement, two specifications of larceny of military property of a value greater than $500.00, and one specification of conduct unbecoming an officer in violation of Articles 107, 121, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, and 933 (2012) (UCMJ). The panel sentenced appellant to pay a fine of $20,000 and to be dismissed from the service.[1]

## BACKGROUND[2]

Appellant reported to Fort Allen, Puerto Rico, in November 2011. On November 19, 2011, appellant signed an agreement to rent a house from Mr. NM for $1,600 per month. Two days later, appellant submitted paperwork to the Fort Buchanan finance office listing the rental price as $1,600. This paperwork was subsequently pulled out by the Fort Buchanan housing office for a random check, and Mr. NM confirmed to the housing office that the contract was for $1,600.

Due to alleged issues with the house, appellant later reached a verbal agreement with Mr. NM to only pay $1,000 per month. This price change was not reported to the finance office. As such, following the unreported price change, appellant was paying $1,000 per month in rent but receiving $1,600 as part of his Overseas Housing Allowance (OHA).

During this same timeframe, appellant was also receiving Basic Allowance for Housing (BAH). However, appellant and his wife divorced in May 2013, which terminated his eligibility for BAH. The signed divorce decree stated that appellant would no longer receive BAH payments as of "June 1, 2013." Despite this language, appellant continued receiving BAH payments after his divorce.

In 2014, Army Criminal Investigation Command (CID) started investigating another soldier stationed in Puerto Rico for OHA fraud. Based on information

---

[1] Appellant personally submits matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which do not warrant discussion or relief.

[2] Oral argument in this case was heard in Malibu, California, on 11 September 2018 at the Pepperdine University School of Law as part of the Outreach Program of the United States Army Court of Criminal Appeals.

gathered during this investigation, CID similarly started investigating appellant and discovered his OHA and BAH overpayments. After being contacted by CID, the local finance office terminated appellant's OHA payments. Shortly thereafter, appellant contacted the finance office, admitted he was only paying $1,000 per month in rent, and then contacted the housing office in attempting to update his prior contract with Mr. NM.

The government charged appellant with numerous offenses related to his OHA and BAH overpayments. At trial, the government presented testimony from a CID investigator, finance and housing office personnel, Mr. NM, and the soldier involved in the initial CID investigation. The government also admitted documentary evidence to include appellant's rental agreement, divorce decree, OHA report, and Leave and Earnings Statements (LES). The defense did not call any witnesses, but argued the government had not proven appellant's criminal intent.

During deliberations, the panel sought to recall Mr. NM to ask additional questions related to the initial rental price and the reason and timing of the price change. The military judge denied the request, stating: "Members, the time for the taking of evidence is closed. Therefore, I am not going to allow the questions." The panel then resumed deliberations and convicted appellant of several offenses.

After the panel issued its findings, the military judge held an Article 39(a), UCMJ, session to discuss sentencing evidence. During this session, the government moved to admit appellant's prior Department of Defense Form 214 (DD 214) in which he received an "Other Than Honorable" discharge. The defense objected based on authentication and relevance. After hearing arguments from both parties, the military judge excluded the evidence under Mil. R. Evid. 403, but then issued a stern warning: "If the defense opens the door by saying he had a spotless record, or something along those lines, then I will reconsider and likely allow it in at that point." Following this ruling, the defense presented a truncated sentencing case that solely consisted of appellant's unsworn statement and limited documentary evidence.

On appeal, appellant alleges the military judge abused his discretion by summarily denying the panel's request for additional evidence from Mr. NM. In response, the government concedes the military judge erred, but argues that there was no material prejudice.

Appellant also alleges three grounds of ineffective assistance of counsel. First, appellant asserts his trial defense counsel failed to investigate whether he gave a copy of his divorce paperwork to his unit administrator (SFC JD). Second, appellant claims his trial defense counsel should have presented evidence over the circumstances of his modified agreement with Mr. NM, which involved the discovery of septic problems at the rental property. Third, appellant argues his trial defense counsel failed to present an adequate sentencing case.

In its response, the government provided affidavits from appellant's trial defense counsel. In their affidavits, trial defense counsel explained: (1) they have no recollections or records of appellant mentioning SFC JD, (2) they strategically avoided discussing the "irrelevant" septic issues, and (3) they specifically and tactically altered the defense sentencing case following the military judge's ruling over appellant's prior DD 214.

## LAW AND DISCUSSION

### A. Factual Sufficiency

Pursuant to our review of the evidence under Article 66(c), UCMJ, we are not personally convinced of appellant's guilt beyond a reasonable doubt for The Specification of Charge I (false official statement) and Specification 1 of Charge III (conduct unbecoming an officer), and we dismiss both specifications in our decretal paragraph.

Article 66(c), UCMJ, states that a service court of criminal appeals "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

In reviewing this language, "[a] clearer carte blanche to do justice would be difficult to express." *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991). Indeed, our superior court has previously described service courts as "the proverbial 800-pound gorilla when it comes to their ability to protect an accused." *United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993). More recently, our superior court reiterated this statutory authority constitutes an "awesome, plenary, de novo power of review." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)).

Viewed independently, the three components of our Article 66(c) statutory authority are commonly referred to as "legal sufficiency ('correct in law'), factual sufficiency ('correct in . . . fact'), and sentence appropriateness ('may affirm only . . . such part or amount of the sentence, as it . . . determines, on the basis of the entire record, should be approved')." *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001). Simply stated, pursuant to Article 66(c), UCMJ, this court is initially required "to conduct a de novo review of [the] legal and factual sufficiency of the case." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are "convinced of the accused's guilt beyond a reasonable doubt." *Id*. at 325. This review involves a "fresh, impartial look at the evidence." *Washington*, 57 M.J. at 399. The evidence must leave no fair and reasonable hypothesis other than appellant's guilt. *United States v. Billings*, 58 M.J. 861, 869 (Army Ct. Crim. App. 2003) (citation omitted).

For The Specification of Charge I (false official statement), the government was required to prove:

> (1) That, on or about 21 November 2011, at or near Fort Buchanan, Puerto Rico, the accused signed a certain official document, that is: Department of Defense Form 2367;
>
> (2) That such document was false in that his monthly rent was not $1,600;
>
> (3) That the accused knew it to be false at the time he signed it; and
>
> (4) That the false document was made with the intent to deceive.[3]

After reviewing the evidence, we are not personally convinced of appellant's guilt beyond a reasonable doubt. As one example, we note the following chain of events that occurred approximately two weeks *after* appellant submitted this form. A housing office employee testified that appellant's paperwork was "pulled out" to be "randomly check[ed]." As part of this process, the housing office called Mr. NM on December 2, 2011. The purpose of this call was to "verify the information that was on the contract," and Mr. NM confirmed the contract was for $1,600 per month. Essentially, the housing office completed two-party verification of the same information the government needed to prove was "false" and "[t]hat the accused knew it to be false at the time he signed it."

We find similar deficiencies of proof for Specification 1 of Charge III. For this offense, the government was required to prove:

---

[3] The language for each element is taken directly from the military judge's findings instructions to the panel.

(1) That, on or about 21 November 2011, at or near Fort Buchanan, Puerto Rico, the accused involved an unwitting civilian, Mr. [NM], in his theft of military property;

(2) That, under the circumstances, the accused's conduct was unbecoming an officer and a gentleman.[4]

After reviewing the evidence, we are not personally convinced of appellant's guilt.[5] The record does not establish beyond a reasonable doubt that Mr. NM was "involved" in appellant's theft of military property. Instead, Mr. NM was involved in a legal contract modification, and the theft occurred when appellant subsequently and intentionally failed to notify the proper personnel. Put another way, the theft was a crime of culpable *omission*, not commission, and the record does not reflect any tangible involvement of Mr. NM.[6]

As we dismiss these two specifications as factually insufficient, we now address appellant's assignments of error for the two remaining specifications. We first address whether the military judge abused his discretion by summarily denying the panel's request for additional evidence.

### B. The Military Judge's Denial of the Panel's Questions

In this case, the parties agree the military judge erred by denying the panel's request to recall Mr. NM,[7] but disagree over whether this error was materially prejudicial. With one exception in language outlined below, we find the error was harmless and affirm both specifications.

---

[4] See footnote 3, *supra*.

[5] Our finding that this offense is factually insufficient moots any analysis of whether this offense was: (1) impermissibly vague, or (2) an unreasonable multiplication of charges. We do note the terms "unwitting" and "involved" were not specifically defined for the panel members, and we encourage practitioners to proactively avoid similar ambiguities over material terms in future cases.

[6] We granted reconsideration to clarify this section of our initial opinion.

[7] We join our superior court in noting "that it is always commendable and constructive to have appellate counsel concede the obvious in briefs and at oral argument." *United States v. Honea*, 77 M.J. 181, 184 n.5 (C.A.A.F. 2018); *see also United States v. Sewell*, 76 M.J. 14, 21 n.2 (C.A.A.F. 2017) (Ohlson, J., concurring in part and dissenting in part) (noting appellate government counsel "admirably and appropriately conceded" several prosecutorial errors during oral argument).

As our superior court has explained, panel members are "at liberty to request that witnesses be called or recalled or to have testimony reread . . ." *United States v. Lampani*, 14 M.J. 22, 26 (C.M.A. 1982); *see also United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) ("A military judge may not summarily deny a member's request to recall witnesses for further questioning"); *United States v. Rios*, 64 M.J. 566 (Army Ct. Crim. App. 2007) (finding that the military judge abused his discretion by summarily denying the members' request to rehear the testimony of two witnesses). This ability of panel members is not curtailed at the close of evidence, as "even after the court members have begun their deliberations, they may seek additional evidence." *Lampani*, 14 M.J. at 25.

Notably, the ability of panel members to request additional evidence is codified in the UCMJ, the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence (Mil. R. Evid.). Under Article 46, UCMJ, the trial counsel, the defense counsel, "*and the court-martial* shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." (emphasis added). Rule for Courts-Martial 921(b) permits the members to "request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced. The military judge may, in the exercise of discretion, grant such request." Finally, Mil. R. Evid. 614(a) states, "[w]hen the members wish to call or recall a witness, the military judge must determine whether the testimony would be relevant and not barred by any rule or provision."[8]

This court reviews a military judge's denial of a panel member's request to recall a witness for abuse of discretion. *Clifton*, 71 M.J. at 491. In this case, the parties correctly agree the military judge erred by denying the panel's request to recall Mr. NM, but this does not end our analysis. Instead, we must also determine whether this error materially prejudiced a substantial right of appellant.

Within this analysis, "[a]ppellant [bears] the burden to show prejudice in the absence of an objection at trial and in the context of a nonconstitutional error." *Id.* at 492 (citing *United States v. Powell,* 49 M.J. 460, 464-65 (C.A.A.F. 1998)). With one minor exception, we find that appellant has not met his burden.

---

[8] To be clear, "the right of the court members to obtain additional evidence is not absolute." *Lampani*, 14 M.J. at 26. Instead, when reviewing a request to recall a witness, "a military judge must consider factors such as '[d]ifficulty in obtaining witnesses and concomitant delay; the materiality of the testimony that a witness could produce; the likelihood that the testimony sought might be . . . privilege[d]; and the objections of the parties to reopening the evidence' before ruling." *Clifton*, 71 M.J. at 491-92 (quoting *Lampani*, 14 M.J. at 26).

First, as in *Clifton*, "this is not a case where the purposes of Article 46, UCMJ, R.C.M. 921(b), and M.R.E. 614(a), were ignored or defeated." *Id*. at 493. The panel members were allowed to "ask some, but not all, questions," and appellant "was not prejudiced by the absence of the members' opportunity to reasonably test and evaluate the evidence presented." *Id*. At one point, trial defense counsel even noted to the panel, "I think you asked about 17 or 18 different questions; some of which were answered, some were not."

Second, the excluded questions did not implicate Specification 2 of Charge II (BAH larceny). Simply put, we do not find any prejudice to appellant for this specification. In fact, in light of our prior findings of factual insufficiency, the only potentially impacted specification is Specification 1 of Charge II (OHA larceny).

Third, for this specification, the government's case was strong. More specifically, the government presented compelling circumstantial evidence of appellant's intent. As one example, appellant's OHA report stated he had "read the overseas housing allowance briefing sheet provided by my commander or authorized representative." As another example, the other soldier implicated in the OHA fraud investigation testified that appellant helped explain to him the differences between OHA and BAH. Overall, the evidence soundly belied the defense argument that appellant did not understand his OHA entitlements.

Finally, and as the government correctly points out, most of the excluded questions were actually answered during Mr. NM's initial testimony. These prior answers help shape our analysis of prejudice. On the other hand, some of the excluded questions related to the exact timing of the price change, and Mr. NM did not squarely address this issue in his initial testimony. While the government presented a strong case of appellant's overall intent, the excluded questions about the timeline could have led the panel to make findings by exceptions and substitutions regarding the exact start date of the specification. To this extent, we affirm an adjusted period during which the larceny occurred in our decretal paragraph.

*C. Ineffective Assistance of Counsel*

Appellant also asserts his trial defense counsel were ineffective by failing to investigate exculpatory evidence, failing to present exculpatory evidence, and failing to present an adequate sentencing case. For each claim, we find appellant has not met his burden to demonstrate deficient performance and prejudice.

To succeed on an ineffective assistance of counsel claim, an appellant must show that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance gives rise to a "reasonable probability" that the result of the proceeding would have been different without

counsel's errors. *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

"We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives. Similarly, we must remain mindful that counsel have wide latitude . . . in making tactical decisions." *Id*. at 379 (internal citations and quotation marks omitted) (alteration in original). "[G]enerally speaking, we will not second-guess the strategic or tactical decisions made at trial by defense counsel." *Id*. at 387 (citations and internal quotation marks omitted). Put most simply, "our scrutiny of a trial defense counsel's performance is 'highly deferential.'" *Id*. at 379 (quoting *Strickland*, 466 U.S. at 689).

However, "we need not determine whether any of the alleged errors [in counsel's performance] establish[] constitutional deficiencies under the first prong of *Strickland* . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of *Strickland*." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citation omitted) (alterations in original).

For his first claim, appellant asserts that he informed his trial defense counsel that he provided his divorce documentation to SFC JD, but they never investigated this exculpatory information. In an affidavit to this court, SFC JD states appellant's defense team never contacted him. However, in this same affidavit, SFC JD wrote, "I do not remember now if CPT Beer gave me documentation about his divorce back in June 2013." At a minimum, based on this statement from SFC JD, appellant cannot meet his burden to demonstrate the second prong of *Strickland*.

For his second claim, appellant asserts that his trial defense counsel were ineffective for failing to present exculpatory evidence surrounding the modification of appellant's lease. Our analysis of this issue is shaped by our prior finding that two specifications are factually insufficient. In solely reviewing the two remaining specifications, we again conclude that appellant cannot demonstrate the second prong of *Strickland*. Pursuant to our review, the alleged deficiencies: (1) remain wholly unrelated to the BAH larceny, and (2) would not give rise to a reasonable probability that the result would have been different for the OHA larceny.

For his final claim, appellant asserts that his trial defense counsel were ineffective for failing to present an adequate sentencing case. Upon reviewing this allegation, we do not find deficient performance, much less prejudice. In their affidavits, trial defense counsel explain they had witnesses prepared to testify, but changed their strategy based on the military judge's ruling concerning appellant's prior DD 214. In light of the wide latitude given to trial defense counsel for tactical decisions, appellant has not demonstrated the first prong of *Strickland*.

*D. Sentence Reassessment*

We must now consider whether we should reassess the sentence or return the case for a sentence rehearing. Pursuant to the principles articulated in *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), we are confident we can accurately reassess appellant's sentence.[9]

Pursuant to *Winckelmann*, we use four factors to guide our determination whether to reassess a sentence when applying them to appellant's case:

(1) Dramatic changes in the penalty landscape and exposure. The dismissal of The Specification of Charge I and Specification 1 of Charge III reduces appellant's exposure from twenty-six years confinement to twenty years confinement. We find this does not constitute a dramatic change in the penalty landscape.

(2) Whether an appellant chose sentencing by members or a military judge alone. In this case, appellant was sentenced by officer members. While we are "more likely to be certain of what a military judge would have done as opposed to members," we are similarly certain of what this officer panel would have done in light of the other factors. *Winckelmann*, 73 M.J. at 16. We acknowledge our superior court has stated this factor "could become more relevant where charges address . . . conduct unbecoming," but this consideration does not change our overall conclusion in this particular case. *Id*.

(3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, in a related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses. This factor weighs heavily in our determination that we may confidently reassess appellant's sentence. Appellant stands properly convicted of two specifications of larceny of military property of a value greater than $500.00. We find these offenses clearly capture the gravamen of the criminal conduct and similarly inculcate the most significant and aggravating circumstances addressed at the court-martial.

(4) Whether the remaining offenses are of the type that CCA judges should have experience and familiarity with to reliably determine what sentence would have been imposed at trial. This factor also strongly supports reassessing the sentence, as this court has ample experience with similar facts and cases. Our experience

---

[9] We have "broad discretion" when deciding "to reassess the sentence or in arriving at the reassessed sentence." *Winckelmann*, 73 M.J. at 12. Our superior court has further observed that Courts of Criminal Appeals (CCA) judges can modify sentences "'more expeditiously, more intelligently, and more fairly' than a new court-martial . . ." *Id*. at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)).

informs us that we can reliably determine what sentence would have been imposed at trial.

In sum, considering the facts of appellant's case and the totality of the circumstances, we find we are able to determine to our satisfaction that, "absent any error, the sentence adjudged would have been of at least a certain severity . . ." *Sales*, 22 M.J. at 308. To this extent, we will affirm only so much of appellant's sentence as includes a dismissal from the service.

## CONCLUSION

The findings of guilty for The Specification of Charge I and Specification 1 of Charge III are SET ASIDE and DISMISSED. We AFFIRM only so much of Specification 1 of Charge II as provides:

> In that, [appellant], U.S. Army, did, at or near Fort Buchanan, Puerto Rico, between on or about 1 January 2012 and on or about 1 July 2014, steal money, military property, of a value of more than $500.00, the property of the Department of Defense.

The remaining findings of guilty are AFFIRMED.

We AFFIRM only so much of the sentence as provides for a dismissal. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BURTON and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

11