OPINION OF THE COURT
OLMSCHEID, Judge:
A general court-martial composed of officer and enlisted members convicted appel *688 lant, contrary to his pleas, of indecent acts with a female under the age of sixteen in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twelve months, forfeiture of all pay and allowances, reduction to Private El, and a reprimand. This ease is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.
Appellant asserts, inter alia, that the military judge erred in allowing the government to introduce prior consistent statements made by the victim, CA, to her father and her best friend for the purpose of supporting the victim’s credibility. For the reasons discussed below, we agree that the military judge erred in admitting CA’s prior statements to her father, but find the error harmless.
BACKGROUND
Appellant was charged with committing an indecent act on or about 20 July 2001 upon the body of CA, a fourteen-year-old girl, by “touching her breasts and vaginal area and by placing her hand on his penis.” At the beginning of trial, the military judge indicated that, in a session pursuant to Rule for Courts-Martial 802, the parties had discussed the issue of “potential hearsay statements specifically, apparently [CA] after 20 July 2001 may have told individuals something which would be consistent with her in-court testimony regarding the allegation of indecent assault.” The military judge indicated that the issue would be addressed during the course of the trial, so no ruling had apparently been made.
During the government’s opening statement, the trial counsel did not focus on the prior consistent statements by CA, making only a single passing reference to them. In the defense opening statement, however, the defense counsel stated:
And ... she waited before telling her parents about her allegations for an entire week. And during that week, at home, her behavior was normal. She did tell her best friend and her boyfriend about her sexual experience, her alleged sexual experience. And then eventually, for whatever reason, she finally decided to tell her parents.
CA, the government’s first witness, testified that in the summer of 2001 she worked for the United States Army as a “summer hire,” or intern, at the gym in Buedingen, Germany. During her employment there, she met appellant, who also worked at the gym. CA said appellant talked with her and the other summer hires about things like music and movies. In particular, he talked with her about a movie she liked called “Save the Last Dance.” She also played basketball with appellant and he lifted weights with the other interns.
CA testified that she was fluent in German and appellant asked her to teach him the language. Appellant also asked her to come to his home and help him with his internet service because the instructions were in German. She stated appellant asked her to explain to his wife how the internet service worked so she could set it up. CA said she asked her parents if she could go to appellant’s residence and they said she could if appellant’s wife was going to be there.
Appellant picked CA up at the gym on 20 July 2001 around 1400 hours. She said she did not know that appellant was coming that particular day. CA testified that they did not really talk on the way to appellant’s residence, but just listened to music. They went to appellant’s residence and he showed her the living room. Even though CA said appellant had asked her to provide the explanation to his wife, appellant’s wife was not home at the time. CA stated that appellant had not told her that his wife would not be home before they arrived. He asked her if she wanted to watch the movie “Save the Last Dance.” He started the movie, showed her the computer, and gave her the instructions.
CA said she started to hook up the computer and explained to appellant how the internet worked. She testified that she talked to appellant for five to ten minutes and then he left the room. He offered her a drink and asked if she wanted anything to eat. CA alleged that when he came back, he *689 started massaging her neck and back. She said he then took off her shirt, still massaging her and she told him she did not “want that what he was doing.” She testified that he turned her around in the chair, pushed her bra down a little, and started kissing her breasts. CA stated that she told appellant to stop and that she had a boyfriend, but appellant told her “to try something” and put her hand on his erect penis. She testified that she immediately pulled her hand back.
CA said she got up, put her shirt back on, and started to walk to the door. CA alleged that at this point appellant unbuttoned and unzipped her pants and told her to pull them down. She testified that she was scared and complied by pulling her pants down to just over her knees. CA stated that appellant moved her underwear to the side and touched her vagina with his finger.
CA said she was more scared than before and told appellant she had to go. She pulled her pants back up and appellant went into the kitchen and got something. He took the keys and unlocked the door. CA said that on the way back to the gym, appellant asked her something, but she did not answer because she was still in shock. Appellant dropped her off at the back entrance and told her it would be their “little secret” and not to tell anyone.
The trial counsel asked CA if she had in fact told anyone what happened. CA answered, without objection, that she told her best friend, Anja, that same day; she told her now ex-boyfriend the next day; and she told her parents a week later. She explained that it took so long to tell her parents because she was scared that if she told somebody, something would happen to her. Her ex-boyfriend encouraged her to tell her parents and the police.
During cross-examination, CA said she had eaten lunch with appellant while they worked together and that she had voluntarily gone to his residence on her personal time. She admitted she did not immediately tell appellant to stop massaging her, she did not scream or run away, and she did not ask the security guards at the installation gate for help when she and appellant passed through. The defense counsel also elicited from CA that she continued to work at the gym for three to five more days after the incident allegedly occurred, despite the fact that appellant still worked there. In response to questions by the defense counsel, CA confirmed she had told her best friend and ex-boyfriend about what happened. CA also agreed that her parents would not approve, and she might get into trouble, if she had made a “sexual advance at an older man.”
The government next called CA’s father, Mr. A, as a witness. He testified that, on 27 July 2001, CA said she did not want to go to work. The defense counsel objected twice to testimony about what CA told her parents, asserting that the testimony constituted inadmissible hearsay. The military judge overruled both objections. Mr. A testified that CA said appellant made her touch him over his pants and he thought she said appellant grabbed her on the shoulders “or something like that.”
The trial counsel asked, “Did she ever give you a reason to doubt her?” Mr. A said, “No, she didn’t.” He later said, “I’ve listened to her and—and the way she said it and her expressions on her face, I knew she wasn’t lying.” The defense counsel subsequently objected and the military judge sustained that objection. At the defense counsel’s request, the military judge instructed the panel to disregard the testimony about Mr. A’s belief that his daughter was telling the truth. The defense counsel requested an Article 39(a) session “to discuss this with counsel, what just happened.” The military judge said they would finish with the examination of Mr. A and then have the requested Article 39(a) session.
During cross-examination, Mr. A said CA’s behavior was “normal” for the week between the alleged incident and the time she told them about it. In an attempt to show an inconsistency with CA’s trial testimony, appellant’s defense counsel began to question Mr. A about his statement to the Criminal Investigation Command (CID) regarding what CA had told him. The trial counsel objected based on hearsay. The military judge stated, “[T]he objection is overruled to the extent to, certainly, this witness can re *690 late what [CA] told him on or about the 27th of July.” The defense counsel then asked, “what did [CA] tell you on or about the 27th of July?” Mr. A stated that CA told him appellant grabbed her and made her touch him through his jogging pants.
Mr. A also testified that sometime after 20 July 2001, but before CA told him about the incident with appellant, he contacted CA’s supervisor to cheek on her job performance. He was informed that there were no problems except that one time CA had been late coming back from lunch. On redirect examination, Mr. A said he was initially upset to learn that CA had been late and asked her what happened. CA responded, “Well, we were just late.” Mr. A told her not to let it happen again.
During the Article 39(a) session held after Mr. A’s testimony, the military judge and defense counsel had the following discussion:
DC: [P]rior consistent statements are only admissible as an exception to [the] hearsay rule made before the motivation to fabricate became apparent. We believe, in this case, that her motivation to fabricate sprang up or came into existence immediately after she left Sergeant Adams’ [residence]. And these statements were clearly made, the statements she made to her father [that] he related in court, were clearly made after that motivation to lie became apparent and therefore, not admissible.
MJ: Right. And it was probably premature, but as I understand your theory, is it the allegations never happened. There was no contact whatsoever of a sexual nature; correct?
DC: Correct, sir.
MJ: Which, again as I understand in your opening statement, you indicated that would certainly if not already apparent come from your client who will deny the charges; correct?
DC: Yes, sir.
MJ: So her credibility is placed at issue; correct? Or will be.
DC: It will be, but perhaps that would be better rebuttal testimony.
MJ: Well, that’s why I said, T would rather not have witnesses be recalled if we could get the testimony in the first instance.’ To the extent that you believe that' her credibility has not been attacked at the close of the case, then I can certainly order the members to disregard anything as it relates to post offense conversations. As I, but again, as I understand your opening statement that won’t happen, correct?
DC: No, sir.
MJ: I mean, those statements certainly would be admitted conditionally upon impeachment, if not already evident based on your cross-examination of CA. I do agree with you and will instruct the members as to how they can consider any prior consistent statement. Certainly on the evidence before me, it doesn’t appear that a statement to the father could be offered for the truth, but simply as a credibility only pertaining to her in-court testimony. But that’s an instructional issue that we can deal with at the appropriate time.
Among its other evidence, the government introduced a stipulation of expected testimony from Specialist (SPC) Patrick Wilson. Specialist Wilson also worked at the Buedin-gen gym and worked with CA. The parties stipulated that SPC Wilson would have testified that CA was a great worker until an incident near the end of July when she was twenty minutes late coming back from lunch. The stipulation indicates that after that CA’s attitude and behavior changed and her job performance deteriorated.
The government also called Anja, CA’s friend, as a witness. Anja testified that CA told her “right away” about what had happened with appellant. When she started to recount what exactly CA had told her, the defense counsel objected based on hearsay. The military judge overruled the objection. Anja testified that CA said appellant massaged CA’s neck and touched her in other places. She said CA was unable to explain in greater detail because she was “in such a state of shock.”
During the defense case-in-ehief, the defense called several witnesses who testified about appellant’s good duty performance, in- *691 eluding his troop commander, First Sergeant, and first-line supervisor. The defense also called appellant’s wife. She testified that appellant told her that a young girl from work would be coming over to help him with the internet service. She said they were not having any marital problems at the time.
Appellant testified in his own defense. He stated that he met CA when she came to work at the gym as a summer hire. He said that his internet service broke down and he asked his supervisor, Mr. Martinez to help him get it set up again. He testified that CA overheard them talking and offered to help. Appellant said he offered to bring her the documents, but she said she would actually have to be on the computer. He stated that he went to the gym on 20 July 2001 to pick CA up to take her to his home and help him with the computer. He asserted that his wife knew about the arrangement.
Appellant testified that he asked CA “if she was okay with going to the [residence] although [his] wife wasn’t there. And she replied, Tes, I have no problem.’ ” He asserted that he told her in the car and again as he put his key in the door to the residence that his wife would not be there. He said CA never indicated she had a problem with it. Appellant testified that it was his habit every time he goes into his residence to close the door and lock it and he did so on this occasion as well.
CA went into the residence and sat at the computer desk and started working on the computer. Appellant agreed that he started playing the movie “Save the Last Dance” in his DVD player based on CA’s request. He said he fast forwarded the movie to CA’s favorite scene where a guy is teaching a girl how to dance. He testified, “at that time, I guess, she heard the music and knowing that’s the part, she reached out to move me and accidentally she hit my private part.” Appellant said, “At that point I told her, “Watch where you’re touching.’ And she replied to me, “What? I have a boyfriend.’ And I said, ‘I don’t care. You know, that doesn’t mean anything to me.”’ Appellant denied that he had an erection. He stated that he went into the kitchen and started making something to eat.
Appellant testified that CA continued to work on the computer, but said she was having trouble. He testified that she said, ‘Well, I guess it’s time to go.” He said he unlocked the door and they left the residence. Appellant stated that CA was quiet and kept to herself on the way home. He alleged that when she got out of the car, she said to him, “Don’t worry. That’s our little secret.” Appellant said he did not immediately say anything about the incident because he did not think anything of it. In response to questions from the court members, appellant said he told his wife about it after CID came to their residence.
On rebuttal, the government recalled Mr. Martinez to testify that he and appellant had not discussed appellant’s internet problems in front of CA and that he did not hear CA offer to fix appellant’s computer. The government also recalled CA who denied she had volunteered, in Mr. Martinez’ presence, to help appellant with his computer.
During the Article 39(a) session when the parties discussed the military judge’s instructions to the panel, the military judge highlighted his proposed instruction regarding prior consistent statements for the defense. He asked if the defense counsel had any additions to the instruction. The defense counsel stated that he had “[n]o change.” The military judge subsequently instructed the court members:
Some of the evidence before the court has been admitted for a limited purpose and may not be considered for any other purpose. Specifically, you heard testimony from [Mr. A] and Anya [P] that [CA] made statements prior to trial regarding the allegations against the accused that may be consistent with her testimony at this trial. If you believe such consistent statements were made, you may consider them for their tendency, if any, to refute a charge of improper motive or recent fabrication. You may not consider the prior consistent statement as evidence of the truth of the matters expressed therein.
During the government’s closing argument, the trial counsel asserted, “Members, credibility is the heart of this case; who you *692 believe. We gave you [CA] a truthful 14-year-old girl. She was honest with you. She was credible. She was consistent. She was corroborated by Dennis, Dwayne, Anja. She told you how the accused touched her on that July 2001.”
In the defense closing argument, the defense counsel offered several possible motives for CA to lie. The defense counsel asserted that CA had not seen appellant’s wife prior to going to appellant’s residence and that when she saw that she was pretty, “[m]aybe there was some competition.” The defense counsel also stated that CA was upset when she returned to work the day of the incident because she was late and that was against Mr. Martinez’ policy. He argued CA was upset and afraid after the incident because she realized that something happened that should not have happened. The panel subsequently found appellant guilty of committing indecent acts upon the body of a child under the age of sixteen.
LAW
Hearsay is defined as “an out-of-court statement made by a declarant that is ‘offered in evidence to prove the truth of the matter asserted’ in that statement.” United States v. McCaskey, 30 M.J. 188, 190-91 (C.M.A.1990) (quoting Military Rule of Evidence [hereinafter Mil. R. Evid.] 801(c)). Generally, such evidence is inadmissible unless it meets “at least one of the specific and time-tested exceptions”[1] to the prohibition against hearsay or falls within one of the categories of out-of-court statements defined as “not hearsay.” Mil. R. Evid. 801(d).[2]
On the other hand, when a statement is not offered for its truth, but only to rehabilitate the credibility of a witness, the prohibition against hearsay is not at issue. In such cases, concepts of logical relevance rather than exceptions to the hearsay rule govern admissibility. United States v. Faison, 49 M.J. 59, 62 (C.A.A.F.1998); McCaskey, 30 M.J. at 193 (stating that a statement offered “as evidence of the fact of the statement rather than as evidence of its content” would not be subject to a hearsay objection); United States v. Simonelli, 237 F.3d 19, 27 (1st Cir.2001) (adopting the “majority view” of the federal courts that “where prior consistent statements are not offered for their truth but for the limited purpose of rehabilitation, ... [Federal Rule of Evidence] 801(d)(1)(B) and its concomitant restrictions do not apply”) (citations omitted).
As with any question of relevance, the military judge must ensure that two requirements are met before admitting a prior statement for rehabilitative purposes. First, the statement must be relevant. Mil. R. Evid. 402. Relevant evidence is defined as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Mil. R. Evid. 401. At least four instances have been recognized in which prior statements of a witness are relevant to rehabilitate the witness’s credibility: (1) to place a purported inconsistent statement in context to show that it was not really inconsistent with a witness’ trial testimony, Simo-nelli, 237 F.3d at 27; (2) to support the denial of making an inconsistent statement, United States v. Castillo, 14 F.3d 802, 805-807 (2d Cir.1994);[3] (3) to refute the sugges *693 tion that the witness’ memory is flawed due to the passage of time, see United States v. Keller, 145 F.Supp. 692, 697 (D.N.J.1956) (stating “where the judge construes a line of questioning to be directed towards impugning the memory of a witness, then he will allow a consistent statement made when the event was recent and memory fresh to be received in support”); and (4) to refute an allegation of recent fabrication, improper influence, or motive, Mil. R. Evid. 801(d)(1)(B).[4] Tome v. United States, 513 U.S. 150, 170, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (Breyer, J., dissenting). In each of these eases, something in addition to the content of the statement supports the witness’ credibility, whether it is timing, context, or some other factor.[5]
In contrast, “[ejvidenee which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force for the simple reason that mere repetition does not imply veracity.” McCaskey, 30 M.J. at 191. Consistency—without more—neither rebuts a specific attack on a witness’ credibility nor offers any further information to explain an apparent weakness. It simply establishes that the witness said the same thing on a prior occasion. “Mere repeated telling of the same story is not relevant to whether that story, when told at trial, is true.” Id. at 192. As has been said, “a lie often repeated does not become the truth.” Id. at 191 (quoting S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual 614 (2d ed.1986)). Consequently, more than mere reiteration of the same statement is required for a statement to be relevant and, therefore, admissible.
DISCUSSION
We review a military judge’s ruling on admission of evidence for an abuse of discretion. United States v. Springer, 58 M.J. 164, 167 (C.A.A.F.2003). Appellant asserts that the military judge erred in admitting, over defense objection, testimony about CA’s prior consistent statements to her father and her best friend, Anja. Appellant argues that the statements were inadmissible hearsay because they were prior consistent statements that did not meet the requirements of Mil. R. Evid. 801(d)(1)(B). We agree that the judge erred in admitting CA’s statements to her father, but on a different basis than that advanced by appellant. We disagree that the military judge erred in admitting CA’s statements to Anja.
The military judge purportedly admitted the statements at issue for the nonhearsay purpose of rehabilitating CA after her credibility had been attacked on cross-examination and in anticipation of appellant’s testimony that she was lying. Because the statements were ostensibly not admitted to prove the truth of the matter they asserted, the rules governing the admission of hearsay do not apply and we turn, instead, to the question of relevance.
STATEMENTS TO ANJA
In his opening statement, the defense counsel emphasized that it had taken CA a week to report the incident to her parents, implying that her belated report was not credible. Additionally, the defense counsel cross-examined Mr. A about his discovery, *694 and subsequent confrontation with CA, that she had been late for work. The implication of this questioning was that CA was falsely accusing appellant to provide an excuse for why she had not gotten to work on time.
Anja’s testimony about CA’s statements was pertinent for the purpose of refuting both of these theories. CA told Anja what had happened on the very day of the incident, 20 July 2001, deflating the defense assertion that the delayed reporting weakened the credibility of the complaint. Furthermore, the defense clearly established that Mr. A called CA’s supervisor after 20 July 2001, the day CA told Anja about appellant’s actions. Therefore, the fact that she described the incident prior to her father finding out about her being late to work countered the defense implication that this was a motivation for CA to he.[6] Consequently, Anja’s testimony about CA’s statements met the criteria of being relevant for a non-hearsay purpose.
Once evidence meets this preliminary requirement, a military judge must apply the balancing test of Mil. R. Evid. 403 to ensure that the evidence’s “probative value is not ‘substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members.’” See McCaskey, 30 M.J. at 193 (quoting Mil. R. Evid. 403). The record does not reflect that the military judge conducted such an analysis in this case. “Where the military judge is required to do a balancing test under [Mil. R. Evid.] 403 and does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less deference from [an appellate court].” United States v. Berry, 61 M.J. 91, 97 (C.A.A.F.2005).
We find that the probative value of Anja’s testimony was not substantially outweighed by the possibility of unfair prejudice. Furthermore, while we note that the military judge did not instruct the panel members on the specific purposes for which Anja’s testimony was relevant, under these facts we are satisfied that the members were not confused as to the proper purpose for which the testimony could be considered. Consequently, we conclude that the military judge properly admitted this evidence.
STATEMENTS TO FATHER
After the defense counsel objected to Mr. A’s testimony about CA’s prior statements, the military judge overruled the objection without requiring the government to state the theory under which the testimony was relevant. The military judge himself did not provide a specific theory of relevance, other than to say that CA’s credibility had been attacked. There was no charge of recent fabrication rebutted by the statements and any motive to lie that existed at the time of her testimony also existed when she made the prior statements.[7] There was no prior inconsistent statement to put into context and no assertion that her memory was faulty. The military judge apparently decided that the statements were relevant to CA’s beseiged credibility[8] because they were consistent with her trial testimony.
The fact that CA made a prior statement that was consistent with her trial testimony, without something more, was not relevant to *695 support her credibility. As we discussed above, mere repetition of a statement is not pertinent to its truth. Accordingly, we find that the military judge erred in admitting the testimony regarding CA’s prior consistent statements to her father.[9]
PREJUDICE
“A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.” UCMJ art. 59(a), 10 U.S.C. § 859(a). When an error is of a nonconstitutional nature, “the Government has the burden of demonstrating that ‘the error did not have a substantial influence on the findings.’ ” Berry, 61 M.J. at 97 (quoting United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F.2003)). “In determining the prejudice resulting from the erroneous admission of evidence, we weigh ‘(1) the strength of the Government’s case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.’ ” McCollum, 58 M.J. at 342 (quoting United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F.1999) (citing United States v. Weeks, 20 M.J. 22, 25 (C.M.A.1985))). Using this analysis, we find that appellant suffered no material prejudice to any substantial right. UCMJ art. 59(a).
The government’s case was strong compared to that of the defense. As we previously stated, the case rested on a determination of credibility between CA and appellant. In performing our review pursuant to Article 66(c), UCMJ, we are permitted to “judge the credibility of witnesses.” In this case, we find the testimony of CA more trustworthy than appellant’s for several reasons. We can discern no realistic motive for CA to lie. The defense counsel’s assertion of “competition” with appellant’s wife appears to have no evi-dentiary basis. Likewise, there was no evidence that CA, a fourteen-year-old girl with a boyfriend at the time of the incident, was attracted to appellant. Moreover, appellant’s assertion that CA volunteered to come to his residence to help with his computer after hearing him talk about his problem with Mr. Martinez was effectively impeached by Mr. Martinez’ denial that such a conversation occurred in front of CA. Simply put, we do not find appellant’s version of the events that occurred at his residence believable.
Furthermore, the quality of the erroneously admitted evidence was not particularly high. As defense counsel emphasized, CA’s report to her parents was made a week after the incident allegedly occurred. Mr. A did not recount much detail about appellant’s alleged actions, but only that CA had said appellant grabbed her and made her touch him over his jogging pants.
Finally, regarding materiality, any evidence on the issue of CA’s credibility was arguably very material since it went to the heart of the government’s case. However, evidence of CA’s prior statements played a role in the defense case itself and was elicited by the defense counsel during cross-examination of CA. Subsequently, after objecting to Mr. A’s testimony about CA’s prior statement during the government’s direct examination, the defense counsel asked him on cross-examination what CA had told him about the incident in an effort to establish that her statements to her parents were inconsistent, or at least incomplete, with her trial testimony. Thus, at the same time the defense objected to the government’s use of the statements to bolster CA’s testimony, it sought to use those same statements to undermine her credibility.
Additionally, the government did not substantially rely on the statements in either its opening statement or closing argument and Mr. A’s testimony was cumulative with both CA’s trial testimony and Anja’s testimony regarding CA’s prior statements. “At most the evidence was an extra helping of what the jury had heard before. Sometimes, of course, that extra helping can be so prejudicial as to warrant a new trial. Not here.” *696 Simonelli, 237 F.3d at 29. Consequently, we find that the military judge’s error in admitting Mr. A’s testimony about CA’s prior statements was harmless.
We have considered appellant’s other assignment of errors, and those matters personally raised by appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), in our review of the record and find them to be without merit. Accordingly, the findings of guilty and the sentence are affirmed.
Senior Judge JOHNSON and Judge KIRBY concur.

. Id. at 191 (citing Mil. R. Evid. 802, 803(l)-(23), 803(24), 804(b)(l)-(5)).

. According to Mil. R. Evid. 801(d), two categories of out-of-court statements, prior statements by a witness and admissions by party-opponent, are "not hearsay,” provided certain conditions are met. One such instance is where "[t]he declarant [of the prior statement] testifies at the trialL] ... is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.” Mil. R. Evid. 801(d)(1)(B). Because a statement meeting these conditions is "not hearsay,” it may be admitted to prove the truth of the matter it asserts.

. In Castillo, the defense attempted to discredit a government witness by asserting that two statements made during his testimony were inconsistent. The court upheld the trial judge’s decision to admit evidence of the witness’ prior statements to help the jury determine whether the two statements made during the witness’ trial testimony and alleged by the defense to be inconsistent meant the same thing, holding that the *693 prior statements were admissible "for the limited purpose of clarifying the apparent contradiction brought out during cross-examination.”

. As previously discussed, statements meeting the conditions listed in Mil. R. Evid. 801(d)(1)(B) are specifically defined as "not hearsay,” regardless of the purpose for which they are offered and are consequently admissible for their truth. Statements not falling within this class, which are nonetheless relevant to rehabilitate a witness, would be hearsay if offered for the truth of the matter asserted. As such, they can only be offered for a limited purpose and not for their truth unless they qualify for some other exception to the prohibition against hearsay.

. It is helpful to view the analysis for determining whether prior consistent statements should be admitted for rehabilitation of a witness through an analogy to uncharged misconduct evidence. "Evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident .... ” Mil. R. Evid. 404(b). Likewise, evidence of a witness’ prior statement cannot be introduced merely to show conformity with her trial testimony. It may, however, be admissible for other purposes, such as those described above.

. On this basis, CA’s statements to Anja could have been admitted as substantive evidence under Mil. R. Evid. 801(d)(1)(B). See United States v. Allison, 49 M.J. 54, 57 (C.A.A.F.1998) (stating that when there are multiple motives to lie asserted, a prior consistent statement may be admitted if it precedes any of the asserted motives). Appellant received a benefit when the military judge did not allow the statements to be used substantively. Cf. Faison, 49 M.J at 62 (stating that the military judge's decision not to receive evidence of prior consistent statement under Mil. R. Evid. 801(d)(1)(B) resulted in a "possible windfall for the defense.”)

. The defense theory at trial was that the incident never happened as alleged and that CA lied from the moment she made the allegation, including when she told her parents.

. The defense’s cross-examination of the victim in this case sufficiently attacked her credibility to open the door to rehabilitation. Among other evidence, they elicited from the victim that she went willingly to appellant’s residence, that appellant drove the victim back to the gym after the alleged incident, and that the victim did not tell any of the guards at the gates, or personnel at the gym of the alleged assault. As the military judge noted, CA's credibility was clearly at issue, so the government would have been permitted to rehabilitate her credibility using admissible, relevant evidence.

. We also note that the military judge did not conduct a balancing inquiiy pursuant to Mil. R. Evid. 403.