# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DAVID M. FINCH**
**United States Army, Appellant**

ARMY 20170501

Headquarters, 82d Airborne Division
Jeffery R. Nance and Christopher E. Martin, Military Judges
Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA; William E. Cassara, Esquire (on brief); William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy Watford, JA; Captain Brian Jones, JA (on brief).

13 March 2019

----------------------------------
OPINION OF THE COURT
----------------------------------

WOLFE, Senior Judge:

In this appeal we address recent amendments to the Military Rules of Evidence [Mil. R. Evid.] permitting the admission of a witness' prior consistent statements.[1] Since at least 2006, this court has sanctioned the use of prior consistent statements to rehabilitate a witness's credibility.[2] While the rule change now allows a court-martial to consider prior consistent statements for their truth as a hearsay exception, given this court's prior cases, the rule change will not significantly alter when a prior consistent statement may be heard by the court.

At appellant's trial, after being cross-examined by the defense, the government sought to introduce a video of a police interview by the complaining

---

[1] Mil. R. Evid. 801(d)(1)(B)(ii).

[2] *See United States v. Adams*, 63 M.J. 691 (Army Ct. Crim. App. 2006).

child victim, AH. The defense objected that the video was hearsay. In this judge-alone trial, the military judge overruled the defense objection and admitted the video in its entirety.[3]

This case is before the court for review under Article 66, UCMJ. Appellant raises seven assignments of error, one of which merits a lengthy discussion but no relief. Another merits relief but only a brief discussion. *See infra* note 5.

## BACKGROUND

On two different occasions in 2015, appellant sexually assaulted his eleven-year-old stepdaughter, AH, while he was stationed at Fort Bragg, North Carolina. Appellant had been a part of AH's life since she was around two years old. Prior to the sexual assaults, they had a good relationship and engaged in various outdoor activities, to include camping.

During a summer weekend in 2015, appellant took AH camping at Mott's Lake, located in Fort Bragg.[4] During the night, AH woke up in their tent to find appellant rubbing her vagina over her clothing. AH remained still and appellant stopped. AH initially thought she might have dreamed the incident but later came to the realization that it actually occurred.

A few weeks later, during mid-September, appellant took AH back to Mott's Lake for another camping trip. While camping, some of appellant's friends arrived and participated in various outdoor activities. Appellant and his friends also began drinking alcohol. During this time, AH believed appellant attempted to give her a drink containing a mixture of different flavored Mountain Dew sodas and alcohol. AH testified that she tasted the mixture, it was "gross," and she immediately spit it

---

[3] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation (providing alcohol to a minor), one specification of sexual abuse of a child, and three specifications of rape of a child who had not attained the age of twelve years, in violation of Articles 92 and 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920b (2012) [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for six years, and reduction to the grade of E-1.

[4] The incidents occurred while AH lived with appellant and her biological mother, SF. SF was also pregnant with appellant's son, WF, at the time.

out. AH asked appellant if the drink contained alcohol to which appellant's response was laughter.[5]

Believing appellant's friends all left, AH eventually went to their tent, read for a while, and laid in her sleeping bag. Appellant was lying next to her in the tent. Before AH fell asleep, she felt appellant put his arm around her abdominal area and then rubbing her vaginal area over her clothing. However, unlike the previous incident, appellant further assaulted AH by moving his hand underneath her pants and underwear and rubbing her vagina. Appellant then inserted a finger into her vagina, which AH described as painful and uncomfortable. While pretending to be asleep, AH moved. This prompted appellant to remove the finger from her vagina, although he went back to rubbing her. Appellant then removed his hand and placed two of his fingers into her mouth. Appellant then pulled AH's pants down to her knees and inserted his penis into her vagina. AH testified that appellant's penis felt bigger than a finger. When a light shined on the tent, appellant stopped assaulting her. AH believed it to be from a car driving by the campsite. She then forced herself to go to sleep. The next morning, appellant and AH packed up the campsite and left for their residence.

AH testified that she first told one of her girlfriends about her stepfather sexually assaulting her. At her friend's encouragement, AH brought the incident to her mother's attention on 25 September 2015, while they both dined at a McDonald's restaurant. AH stated she told her mother, SF, that appellant molested her.[6] Assuming AH did not fully understand what she was saying, SF asked her what she meant. AH replied that appellant "touched" her.

SF took AH to Sergeant (SGT) Olson's house to confront appellant. Appellant was living with SGT Olson, as appellant and SF were having marital issues. SF initially spoke to appellant about AH's allegation outside of AH's presence. Appellant denied the allegations. SF then brought AH into the same room as appellant. At this point, appellant said, "[AH], why would you say that? That's not true." AH responded, "Yes, it is." SF was confused as to how to proceed with AH's allegations, which she characterized as "absolutely insane, ridiculous pieces of information." On the way home, SF asked AH if she wanted "the cops" called. AH

---

[5] While we assess the evidence supporting The Specification of Charge I to be legally sufficient, we are not personally convinced of appellant's guilt for the offense of providing alcohol to AH. Accordingly, we grant relief in our decretal paragraph.

[6] SF testified that on 25 September 2015, while at a McDonald's restaurant, AH told her that appellant touched her and raped her.

purportedly told her, "No. I don't want him to go to jail. I still love him." Based on her eleven-year-old daughter's response, SF did not contact law enforcement. Appellant returned to live with SF and AH shortly after SF gave birth to a son.

AH made subsequent disclosures about the sexual assaults to other non-adult friends. Having run away from home in March of 2016, AH finally told the mother of a friend that appellant "raped her" and that her own mother "hadn't done anything about it." Her friend's mother notified the police.

The U.S. Army Criminal Investigation Command (CID) investigated the assaults. As part of the investigation, CID Special Agent JB conducted a video-recorded interview of AH. At trial, the government offered into evidence AH's video-recorded statement as Prosecution Exhibit (PE) 3. Trial defense counsel objected on the grounds that the video was hearsay and cumulative. The government responded that the interview was admissible as a prior consistent statement given that the defense, through cross-examination, attacked AH's credibility, her timeline, her memory, and suggested AH had a motive to fabricate. The military judge overruled the defense objection and admitted PE 3 into evidence.

## LAW

In 2016, the President amended Mil. R. Evid. 801(d).[7] As amended, the subparagraph addressing prior consistent statements is split into two parts. Military Rule of Evidence 801(d)(1)(B)(i) ["Part (i)"] addresses instances where a prior consistent statement is offered to rebut an allegation of recent fabrication or influence. Military Rule of Evidence 801(d)(1)(B)(ii) ["Part (ii)"] addresses a prior consistent statement offered to rehabilitate the credibility of the witness on other grounds. As amended, the rule reads as follows:

> (d) *Statements that Are Not Hearsay*. A statement that meets the following conditions is not hearsay:
>
> (1) *A Declarant-Witness' Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> . . .
>
> (B) is consistent with the declarant's testimony and is offered:

---

[7] Exec. Order No. 13,730, 3 C.F.R. 492 (2017).

(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; . . . .

We begin by considering the effect of this change.

### A. When admitting a prior consistent statement to rebut a charge of recent fabrication or undue influence.

We start by holding that the amended rule does not change, at all, the admissibility of a prior consistent statement offered to rebut a charge of recent fabrication or undue influence. We make this conclusion for several reasons.

First, Part (i) of the amended rule, which addressed introducing a prior consistent statement to rebut a claim of recent fabrication or undue influence, was not substantively changed by the amendment.

Second, Part (ii) of the amended rule does not expand the scope of admissible prior consistent statements in Part (i). Part (ii) only applies to circumstances where a party seeks to admit a prior consistent statement on "*another* ground." "Another" means in a manner different than that already specified, or "anything additional or remaining beyond those already considered." *Another*, OED Online, Oxford University Press, December 2018, www.oed.com/view/Entry/8102; *see*, *e.g.*, *United States v. Sager*, 76 M.J. 158, 162 (C.A.A.F. 2017) (applying the same reasoning to the term "otherwise"). Part (ii) of the rule does not apply if a party attacks a witness' credibility on *any* ground. Such an interpretation would render Part (i) of the rule surplusage, in violation of the eponymous canon of statutory construction. *Sager*, 76 M.J. at 162. Accordingly, we see the addition of Part (ii) as having no effect when determining the admissibility of prior consistent statements to rebut an implied claim of a recent motive to fabricate or recent undue influence.

Third, unless we confuse repetition with rehabilitation, statements made after the alleged motive arose do not rehabilitate the witness' credibility. That was the essential holding of our superior court's decision in *United States v. McCaskey,* 30 M.J. 188, 192 (C.M.A. 1990), which was then solidified by *Tome v. United States,* 513 U.S. 150, 156 (1995).

Accordingly, we conclude that the case law requirement that a prior consistent statement under Part (i) predate a motive to fabricate to be admissible is unchanged.

*See, e.g., United States v. Tripp*, ARMY 20130683, 2016 CCA LEXIS 194 (Army Ct. Crim. App. 30 Mar. 2016); *United States v. Henderson*, ACM 38379, 2014 CCA LEXIS 927 (A.F. Ct. Crim. App. 29 Dec. 2014); *United States v. Moore*, No. 2012003322, 2013 CCA LEXIS 419 (N.M. Ct. Crim. App. 14 May 2013).

*B. United States v. Adams:*[8] *Part (ii) of Military Rule of Evidence 801(d)(1)(B) is not entirely new to Army practice.*

Prior to the amendment of Mil R. Evid. 801(d) and Federal Rule of Evidence [Fed. R. Evid.] 801(d), the rules did not specifically address if a prior consistent statement was ever admissible for reasons *other than* to rebut a motive to fabricate or undue influence. If the credibility of a witness' in-court testimony is attacked based on the passage of time and a lapse in memory, could a party introduce a statement made closer in time to the offense to rehabilitate the witness? A strict reading of the old rule would not allow it. Absent a motive to fabricate or claim of undue influence, Mil. R. Evid. 801(d) and Fed. R. Evid. 801(d), prior to their amendment, did not provide a hearsay exception.

Nonetheless, this court, and many of the federal circuits, allowed the use of prior consistent statements to rehabilitate a witness.[9] In *United States v. Adams*, this court cited to civilian federal case law to conclude:

> At least four instances have been recognized in which prior statements of a witness are relevant to rehabilitate the witness's credibility: (1) to place a purported inconsistent statement in context to show that it was not really inconsistent with a witness' trial testimony, (2) to support the denial of making an inconsistent statement, (3) to refute the suggestion that the witness' memory is

---

[8] 63 M.J. 691 (Army Ct. Crim. App. 2006).

[9] *See, e.g., United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001); *United States v. Castillo*, 14 F.3d 802, 806 (2d Cir. 1994) (use of prior consistent statements "is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principle of completeness, though not a precise use of [Fed. R. Evid.] 106.") (quoting *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986)); *United States v. Casoni*, 950 F.2d 893, 905 (3d Cir. 1991); *United States v. Harris*, 761 F.2d 394, 400 (7th Cir. 1985).

> flawed due to the passage of time, and (4) to refute an
> allegation of recent fabrication, improper influence, or
> motive. In each of these cases, something in addition to
> the content of the statement supports the witness'
> credibility, whether it is timing, context, or some other
> factor.

63 M.J. at 696-97 (internal citations and parenthetical omitted). Of the four circumstances cited in *Adams*, only the fourth exception could be found in the text of the rule as it existed at the time.

Accordingly, only under the fourth exception could a prior consistent statement be admitted for its truth. *See Adams*, 63 M.J. at 691 n.4. Thus, after *Adams*, prior consistent statements were broadly admissible to rehabilitate a witness, but were admissible substantively only as permitted by Mil. R. Evid. 801. By amending Mil R. Evid. 801(d) to include Part (ii), prior consistent statements that were admissible under *Adams* for a limited purpose (e.g. for rehabilitation), now may be admitted for *substantive* effect.

As *Adams* indicated, experience has shown that Part (ii) of the rule is most likely to present itself under two circumstances. First, if a party impeaches a witness with a prior inconsistent statement, the witness' credibility has been attacked and may be rehabilitated with a prior consistent statement.[10] Second, if a witness' credibility is attacked on the grounds of faulty memory, the witness' credibility may be rehabilitated by a statement that is consistent with their in-court testimony. These were the exceptions we saw in *Adams*. They were also the two circumstances specifically identified by the drafters to the amended federal rule. *See* Advisory Comm. on Evid. R., Agenda for Comm. Meeting, at 56-67 (3 May 2013) [Advisory Committee];[11] *see also* Advisory Comm. on Evid. R., Minutes of the Meeting of May 3, 2013 [Minutes].[12]

---

[10] *See, e.g.*, *United States v. Brennan*, 798 F.2d 581, 587-88 (2d Cir. 1986) (prior statement was not admissible to rebut a charge of improper motive, but it was admissible to clarify an inconsistency: "prior consistent statements may be admissible for rehabilitation even if not admissible under Rule 801(d)(1)(B)") (citing *Pierre*, 781 F.2d at 333).

[11] https://www.uscourts.gov/sites/default/files/fr_import/EV2013-05.pdf.

[12] https://www.uscourts.gov/sites/default/files/fr_import/2013-05-Evidence-Minutes.pdf.

*C. Part (ii) of MRE 801(d)(1)(B) does not require the basis of impeachment be "recent."*

To admit a prior consistent statement to rebut a claim of fabrication, the rule and interpretive cases require that the fabrication be "recent." That is, the offering party must meet a temporal threshold requirement. Part (ii) of Mil. R. Evid. 801(d)(1)(B) does not have a temporal component similar to Part (i). While the "prior" consistent statement must axiomatically predate the witness' testimony itself, it need not predate the impeachment evidence, as is required under Part (i) when there is an alleged "recent" motive to fabricate. When a prior consistent statement is offered under Mil. R. Evid. 801(d)(1)(B)(ii), the offering party does not have to per se show the timing of the prior statement.

For example, in *Pierre*, a law enforcement agent conceded on cross-examination that key facts about a suspect interview mentioned in his testimony were not included in his handwritten interview notes. 781 F.2d at 330. In other words, the absence of these facts in his notes was a prior inconsistent statement that was used to impeach his testimony. *See, e.g., Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances where that fact naturally would have been asserted."). However, the government was permitted to introduce that the agent's formal report, almost certainly made *after* he wrote his notes, did include the key facts. *Pierre*, 781 F.2d at 331. The prior statement in the formal report rebutted the inference that the witness had fabricated the "new" key facts in his testimony.

But, to be clear, the timing of the prior consistent statement will often be key to determining the admissibility of a prior consistent statement under Part (ii). Even if the timing of the prior consistent statement is not a per se requirement to a Mil. R. Evid. 801(d)(1)(B)(ii) analysis, it remains highly relevant when assessing the probative value of the prior consistent statement. As the Reporter to the Committee on Evidence Rules noted, Fed. R. Evid. 403, not Fed. R. Evid. 801, remains the primary means of excluding prior consistent statements that have little probative value. Advisory Committee, at 55.

*D. Part (ii) requires rehabilitation of the credibility of a witness.*

"Mere repeated telling of the same story is not relevant to whether that story, when told at trial, is true." *McCaskey*, 30 M.J. at 192. A prior statement admitted under Mil R. Evid. 801(d)(1)(B)(ii) must rehabilitate the credibility of the witness in order to be admissible under the rule. The fact that a statement was repeated in the past, without more, is not very probative in rehabilitating the credibility of the witness' in-court testimony.

In general, to be rehabilitative, a prior consistent statement must address the manner in which the witness' credibility was attacked. In *Pierre*, the witness was impeached for omitting key facts in his interview notes. The implication was that the witness had either made up the key facts after the interview or had an inaccurate memory about what was said in the interview. 781 F.2d at 334. A formal report that contained the key facts, created shortly after the interview, tended to rebut both implications, and therefore rehabilitated the witness' credibility.

Consider a few scenarios. If a party attacks a witness' credibility based on his reputation for being a liar, does it rehabilitate the credibility of the witness to introduce a prior consistent statement? How does the fact that the witness repeated his trial testimony on an earlier occasion rebut or rehabilitate an allegation that he is a liar? Or consider when a party attacks a witness by introducing a prior criminal conviction. Does it rehabilitate a witness' credibility to show the court-martial that the witness made a similar statement earlier? Absent extraordinary circumstances, we think not.

Assessing the probative force of a prior consistent statement requires asking whether the prior statement actually rehabilitates the credibility of the witness for "another ground" other than mere repetition. As a last example, consider a witness whose credibility has been attacked because the witness has *always been biased* against the accused. A prior consistent statement, made while the witness was still biased against the accused, would offer little in rehabilitation of the witness' credibility. By contrast, if the witness is currently biased while testifying against the accused, but had made a prior consistent statement when they were friends, the prior consistent statement rehabilitates the witness' credibility by tending to show that the witness' testimony is not slanted by bias.

In other words, a prior consistent statement admitted under Part (ii) must be probative of some fact at issue. And repetition alone will not meet the offering party's burden. *McCaskey*, 30 M.J. at 192; *see also Adams*, 63 M.J. at 697 n.5.

### E. Consideration of the Drafter's Analysis.

As we find the plain text of the amended Mil. R. Evid. 801(d)(1)(B) controlling, we do not weigh heavily the Drafter's Analysis. "[P]rinciples of statutory construction are used in construing the *Manual for Courts-Martial* in general and the Military Rules of Evidence in particular." *United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007) (citing *United States v. James*, 63 M.J. 217, 221 (C.A.A.F. 2006)). "[W]hen the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (citations and quotation marks omitted).

However, we see the analysis as potentially confusing, and therefore worthy of a brief discussion. In adopting the rule, the Joint Service Committee on Military Justice wrote:

> The amendment does not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes. It does not allow impermissible bolstering of a witness. As before, prior consistent statements under the amendment may be brought before the factfinder only if they properly rehabilitate a witness whose credibility has been attacked. As before, to be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of Rule 403. As before, the trial court has ample discretion to exclude prior consistent statements that are cumulative accounts of an event. *The amendment does not make any consistent statement admissible that was not admissible previously – the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well.*

*Manual for Courts-Martial, United States* (2016 ed.), Mil. R. Evid. 801(d)(1)(B)(ii) analysis at A22-61 (emphasis added). The analysis to the change to Mil. R. Evid. 801(d)(1)(B) was nearly a verbatim copy of the Drafter's Analysis to the change in Fed. R. Evid. 801(d)(1)(B). As noted above, the change to Fed. R. Evid. 801(d)(1)(B) merely reflected the existing federal practice in most circuit courts. Thus, the Drafter's Analysis to the federal rule correctly reflected its effect on practice in federal civilian courts.

The analysis to Mil. R. Evid. 801(d)(1)(B) also correctly reflects the effect of the amendment on Army practice. As discussed above, this Court, in cases such as *Adams*, sanctioned the use of prior consistent statements beyond the text of Mil. R. Evid. 801(d)(1)(B) to rehabilitate a witness' credibility after an impeachment with a prior inconsistent statement or claim of faulty memory. Thus, if Army practitioners were aware of this court's precedent in *Adams* (a question we need not answer) the Drafter's Analysis correctly summarized the change to Army practice.[13]

---

[13] We have not been able to find a case from the Court of Appeals for the Armed Forces (CAAF) which adopted the reasoning in *Adams* whole cloth, but perhaps the CAAF came close in two cases. *See United States v. Coleman*, 72 M.J. 184, 188 (C.A.A.F. 2013) (CAAF appeared to state in dicta that a prior consistent statement

(continued . . .)

*F. Cases addressing the change to Federal Rule of Evidence 801(d)(1)(B).*

Regardless of whether the change to Mil. R. Evid. 801(d)(1)(B) actually changes military practice, it is at least now clear that military and federal courts are operating under the substantially same rule. As discussed, the new Mil. R. Evid. 801(d)(1)(B), as amended, mirrors the same rule in the Federal Rules of Evidence. Accordingly, we find federal circuit courts' interpretation of Fed. R. Evid. 801(d) to be highly persuasive.

In *United States v. J.A.S.*, 862 F.3d 543 (6th Cir. 2017), an eight year-old girl, "KV," accused her uncle of sexual abuse. An experienced child-forensic interviewer from the FBI conducted a videotaped interview with KV. In a judge-alone trial, KV's testimony was impeached by pointing out that some aspects of her testimony were new and by highlighting some collateral points in which her testimony differed from her prior descriptions of the assault. In response, the government moved to admit, over defense counsel's objection, the video of KV's interview with the FBI. *Id.* at 545.

The district judge overruled the defense objection finding that the video met the residual hearsay exception. On appeal, the Sixth Circuit determined that regardless of whether the video was admissible as residual hearsay,[14] it was "plainly admissible" as a prior consistent statement under Fed. R. Evid. 801(d)(1)(B)(ii). As KV's credibility was attacked, and her description of the assault in the video was "largely consistent" with her trial testimony, the district court judge correctly admitted the video. *J.A.S.*, 862 F.3d at 545.

In *United States v. Cox*, 871 F.3d 479 (6th Cir. 2017), the defendant attacked a child victim's memory by asserting that her testimony was based on reviewing photos and not an actual memory of the events in question. A law enforcement agent

---

(. . . continued)
that is not admissible under Mil. R. Evid. 801(d)(1)(B) could be admissible "simply to corroborate, or rehabilitate, the in-court testimony of a witness . . . ."); *United States v. Morgan,* 31 M.J. 43, 46 (C.M.A. 1990) (labeling impeachment by prior inconsistent statement as creating the "spectre" of undue influence that continued through the trial).

[14] *See, e.g., United States v. Carista*, 76 M.J. 511, 515 (Army Ct. Crim App. 2017) (Under the "tipsy coachman" doctrine, this court will affirm when a trial court reaches the correct result even if the analysis is wrong).

was then permitted to testify the child had told him about the abuse before seeing any photos. The child's prior statements were admitted to rebut the claim of a faulty memory. *Id.* at 487; *see also Berry v. Beauvais,* No. 13-cv-2647, 2015 U.S. Dist. LEXIS 119974, *5-6 (D. Colo., Sept. 9, 2015). In contrast, the Tenth Circuit found that prior consistent statements had been erroneously admitted in *United States v. Magnan,* No. 17-8026, U.S. App. LEXIS 33353, at *22-23 (10th Cir. Nov. 28, 2018) (order and judgment). There, the government argued that the defense's opening statement had opened the door to introducing prior consistent statements under Fed. R. Evid. 801(d)(1)(B)(ii). The court found that, because the defendant had not actually extracted inconsistent statements or accused the witness of misremembering, Fed. R. Evid. 801(d)(1)(B)(ii) had not been triggered. *Id.* at *23.

## DISCUSSION

Having considered the reach of the changes to Mil. R. Evid. 801(d)(1)(B), we now turn to applying the rule to appellant's assigned error. In this case, the military judge admitted the entire video interview of AH.[15]

The defense cross-examination of AH was both long and far-reaching. The defense impeached AH by implying that she was motivated to fabricate a claim of sexual assault because she did not like her family and wanted to get out of the home. The defense cross-examined AH on her prior statements to her mother, CID, her boyfriend, her friends, and a school counselor. The defense cross-examined AH on being disciplined by her parents and having her phone and electronic devices taken away. The defense asked AH whether she had run away from home, to include a recent instance. The defense also impeached AH by pointing out that her testimony included new facts that were not part of her initial report. During the government's direct examination, AH testified that appellant had given her alcohol in connection with one of the assaults and also told the court-martial that appellant had put his finger in her mouth in a sexual manner. On cross-examination, the defense specifically elicited that these facts had not been included in her lengthy interview by CID.

As the military judge did not specify under which part of MRE 801(d)(1)(B) he admitted the video, we address both.

---

[15] We note that the military judge admitted the video prior to reviewing it. As the contents of the video are usually necessary when determining whether the video was a prior consistent statement, the ruling was premature.

### A. *Admission of the video under Part (i) to rebut a recent claim of undue influence.*

After AH testified for the government, the defense conducted a thorough cross-examination. The defense explored various motives to fabricate the claim of assault. Many of the theories involved motives that predated her interview with CID, and therefore could not be a basis to introduce the interview. *See Tome,* 513 U.S. at 156. However, part of the defense cross-examination was directed to imply that AH's testimony was influenced by her desire to no longer live with her family. That is, the defense implied that AH presently (that is, while testifying), was being influenced by her desire not to live with her mother.

> Q. Did you tell CID that your mom only cares about herself?
>
> A. Yeah.
>
> Q. And she only wants to live in a perfect, little world with her perfect, little child?
>
> A. Yes, ma'am.
>
> Q. That's a yes?
>
>   And you don't want to live with her right now?
>
> [Affirmative response by the witness]
>
> . . .
>
> Q. And you want to live with your friend?
>
> A. I don't know where I want to live at this moment.

The questions (and answers) elicited by the defense implied that AH's testimony in court was influenced by her present desire to no longer live with her parents. AH wanted to live with "her friend," not her parents. The obvious inference that the defense wanted the court to draw was that AH's testimony was motivated by a desire to be removed from the home, a goal that would be furthered by appellant's conviction.

As we explain in more detail below, the defense also impeached AH by pointing out that facts asserted in her testimony were not included in her interview with CID. The defense also questioned AH about how she had recently run away. As the defense theory of the case was that AH had fabricated the claim of sexual assault, this line of attack clearly implied that AH had fabricated new facts *after* the CID interview.

Accordingly, we conclude that the defense cross-examination of AH opened the door for the government to introduce prior consistent statements to rebut the charge of recent fabrication.

We see this case as similar to *Morgan.* In that case, the defense cross-examination of the child-victim's mother confronted her with prior inconsistent statements and implied that she had fabricated a claim of molestation in order to trigger her husband's return from a deployment. 31 M.J. at 45. The CAAF determined that the "defense counsel quite clearly charged fabrication since the testimony at the Article 32" and therefore the prior consistent statements made at the Article 32 hearing were admissible. *Id.* at 46.

*B. Admission of the video under Part (ii) to rehabilitate AH's credibility on other grounds.*

During the cross-examination of AH, the defense, at several instances, impeached AH's testimony as being inconsistent with what she had told Agent JB from CID.

> Q. . . . And you didn't tell -- do you remember your
> interview with CID Agent [JB]?
> A. I watched the video yesterday.
>
> Q. Okay. And you didn't tell him anything in that
> interview about alcohol?
>
> A. Some things I did forget to mention and I understand
> that ----
>
> Q. Right.
>
> A. ---- I should have.

Q. But in that interview you didn't say anything about
alcohol?

A. No, ma'am.

Q. And you also said that Specialist Finch put his fingers
in your mouth?

A. Yes, ma'am.

Q. And you didn't tell that to Special Agent [JB] either?

A. No, ma'am.

The defense then asked AH whether Agent JB had specifically asked her several times, "Was there anything else you'd like to add?"  AH agreed.  Later, the defense returned to implying that AH's testimony was inconsistent with what she had told Agent JB.

Q. And did you run away to your current boyfriend's
house?

A. Yes, ma'am.

Q. You spoke to Special Agent [JB] about having access
to electronics and the rules around them.  So your mom
took away your phone?

A. Yes, ma'am.
Q. And you told Special Agent [JB] it was for eating food
in your room?

A. Hmm?

. . .

Q. So you told Special Agent [JB] that you never did or
saw anything on the phone that your mom didn't want you
to see or do?

> A. I just Instagram and talk to friends and watch YouTube videos.

The net effect of this cross examination was to attack AH's credibility by claiming that her testimony was materially different than what she had told Agent JB during an official interview. This attack allowed the government to rehabilitate AH's credibility under the analysis in *Adams* and Part (ii) of Mil. R. Evid. 801(d)(1)(B).

As this court stated in *Adams,* and as Mil. R. Evid. 801(d)(1)(B)(ii) now makes clear, a party may introduce a prior consistent statement to rehabilitate the credibility of a witness who has been impeached with a prior inconsistent statement. The prior consistent statement may be relevant to either "(1) to place a purported inconsistent statement in context to show that it was not really inconsistent with a witness' trial testimony; (2) to support the denial of making an inconsistent statement, [or] (3) to refute the suggestion that the witness' memory is flawed due to the passage of time." *Adams*, 63 M.J. at 696-97 (internal citations and parenthetical omitted).

In the video, AH's description of the assault was broadly consistent with her in-court testimony. That is, the defense implication that AH's testimony was inconsistent with what she told CID was factually rebutted by watching the interview. By offering the video, the government allowed the factfinder to determine the materiality of the allegedly inconsistent statements. This is a similar result to the Sixth Circuit's reasoning in *J.A.S.*, 862 F.3d at 545, but we note this will be a fact-dependent inquiry and analysis in every case. *See, e.g., Simonelli*, 237 F.3d. at 26-29 (analyzing whether a witness' prior consistent statements served a rehabilitative purpose or were merely "an extra helping of what the jury had heard before").[16]

Accordingly, we separately conclude the video was admissible under Part (ii) of Mil. R. Evid. 801(d)(1)(B). We would agree with appellant that the CID interview did cover extraneous matter not related to the charged offenses. Assuming this material was not probative of any issue of consequence, it was also not prejudicial. Importantly, the video did not contain inadmissible claims of uncharged misconduct, prohibited character evidence, or other material.

---

[16] *Simonelli* was cited by this court in *Adams* and by our superior court in *Coleman*. *See* 63 M.J. at 697; 72 M.J. at 188-89.

*C. The key test: Military Rule of Evidence 403.*

Notwithstanding that the video was admissible under Mil. R. Evid. 801 as a prior consistent statement, we separately, if briefly, address whether it was admissible under Mil. R. Evid. 403. As the Committee Reports to the amendment to Fed. R. Evid. 801(d) notes, "[a]s before, to be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of Rule 403." Minutes, at 5.

In reviewing challenges to evidence based on Rule 403, we must give "the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Cox*, 871 F.3d at 486.[17] "Where a military judge properly conducts the balancing test under Military Rule of Evidence 403, we will not overturn his decision unless there is a clear abuse of discretion." *United States* v. *Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

Presented with a Mil. R. Evid. 403 objection to the admission of a prior consistent statement, the military judge must consider the probative weight in rehabilitating the witness's testimony against the danger of unfair prejudice, confusion, and wasting time. When admitting a lengthy video, it may be that portions of the video survive the Mil. R. Evid. 403 balancing test while other portions are irrelevant and a waste of time, confusing, or most importantly, contain unfairly prejudicial matter that the military judge needs to excise from the admitted exhibit. Or, in other instances, it might be that the prior statement can only be understood within the context of the entire video. Yet, in other instances, the statement might not come in at all. Again, this will involve a case-by-case analysis.

Here, appellant's only objection to the video was that it was hearsay. But, even assuming that a Mil. R. Evid. 403 objection was preserved on appeal, and after having reviewed the entire record and having watched the entire video, we do not find error let alone clear and obvious error. This was a judge-alone case. This was also a case involving a child witness and child victim. *See United States v.*

---

[17] This phrasing has been adopted by a variety of courts. *See* 1 J.Weinstein and M. Berger, Weinstein*'s Evidence* § 403[03] (1982); *see also E.I. Dupont De Nemours & Co. v. Kolon Indus.*, 564 F. App'x. 710 (4th Cir. 2014); *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008); *United States v. Seymour*, 468 F.3d 378 (6th Cir. 2006); *United States v. McDowell*, 762 F.2d 1072 (D.C. Cir. 1985); *United States v. Day*, 591 F.2d 861 (D.C. Cir. 1978); *United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977).

*Rodriguez-Rivera,* 63 M.J. 372, 378 (C.A.A.F. 2006) ("As a general matter, we have permitted greater latitude and flexibility when it comes to treatment and testimony of child witnesses."). Most importantly, this is a case where the defense attacked the credibility of AH on multiple fronts, for reasons that started at the time of the assault and continued through the trial. In cross-examination, the defense listed, one-by-one, all the persons that AH claimed to have told about appellant's crimes. The defense's implication was *not* that AH had honestly told her story before. Accordingly, we see no error, plain or otherwise, in the admission of the video.

## CONCLUSION

The Specification of Charge I and Charge I are SET ASIDE and DISMISSED. *See supra* note 5. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986), the sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court